## BELL *v.* PORTER.

1. PARTNERSHIP—DISSOLUTION—WINDING UP AFFAIRS—STATUTES.
   Under 2 Comp. Laws 1929, § 9870, partnership is not terminated by dissolution, but is continued until winding up is completed.

2. SAME—ACTION AGAINST SURVIVING PARTNER.
   Where partnership had been dissolved but not wound up, it continued, and therefore action on partnership transaction was properly brought against surviving partner.

3. SAME—ADMISSIONS BY PARTNER—SCOPE OF AUTHORITY.
   Under 2 Comp. Laws 1929, § 9851, partner may make binding admission if within scope of his authority.

On admissions of partner as to past transactions or events as evidence against firm or other partner, see annotation in 73 A. L. R. 447, 465.

As to winding up of partnership firm, see annotation in 28 L. R. A. 107.

4. SAME—RIGHT TO WIND UP AFFAIRS.

Under 2 Comp. Laws 1929, § 9877, partners, or certain of them, or legal representatives, have right to wind up partnership affairs, unless otherwise agreed.

5. SAME—DISSOLUTION—CREDITOR MAY PROCEED AGAINST PARTNERS OR SURVIVOR—IMPAIRMENT OF CONTRACT.

Creditor of partnership may proceed to judgment against partners or survivor irrespective of dissolution and transfer of its property to trust company for purpose of winding up its affairs, since without his consent partners may not impair obligation of his contract.

6. SAME—PARTNERS MAY SETTLE CLAIM NOTWITHSTANDING DISSOLUTION.

Since partners may be sued on partnership debt in spite of dissolution and transfer of its property to trust company for purpose of winding up its affairs, they may settle, adjust, or compromise said claim, and, also, to avoid litigation, they may adjust and settle any claim against partnership, notwithstanding provision of 2 Comp. Laws 1929, § 9875, that partnership is not bound by act of partner after dissolution, where partner has no authority to wind up partnership affairs.

7. SAME—SETTLEMENT OF CLAIM PENDING WINDING UP AFFAIRS.

In spite of transfer of partnership property to, and appointment of, trust company to wind up its affairs, there remained in partners full authority in respect of adjustment, compromise, and settlement of claims against partnership.

8. SAME—ADMISSIONS BY PARTNER—SCOPE OF AUTHORITY—EVIDENCE.

Admission by partner, since deceased, respecting adjustment of past partnership transaction, after dissolution and pending winding up its affairs by trust company, was within scope of his authority, was binding on partnership, and therefore was admissible in evidence in action against surviving partner.

9. SAME—PAST PARTNERSHIP TRANSACTION—EVIDENCE.

While dissolution of partnership works destruction of power of one partner to bind another as partner in any future business, it does not affect what is past, and consequently admissions of one partner made after dissolution of firm, relating to past transactions, are admissible as against all partners.

10. SAME—EXPLANATORY WRITING ON PARTNERSHIP BOOKS—ADMISSIONS—EVIDENCE.

    Explanatory writing which partner caused to be made on partnership books, after dissolution and pending winding up its affairs, respecting past partnership transaction with one of its employees, and indicating indebtedness to him, is no more than admission, and therefore was properly received in evidence in action against surviving partner.

Appeal from Muskegon; Vanderwerp (John), J. Submitted June 8, 1932. (Docket No. 40, Calendar No. 36,513.) Decided December 6, 1932.

Assumpsit by Lloyd Bell against Glenn Porter, surviving partner, for salary claimed to be owed him by partnership. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*William J. Balgooyen,* for plaintiff.

*Arthur W. Penny,* for defendant.

CLARK, C. J. The defendant, Glenn Porter, and William A. Wyman, in 1913, became partners in a general real estate business.

The plaintiff was employed, chiefly as salesman, from 1919 to 1924, at a salary of $100 per month and 10 per cent. of net profits of the business, and thereafter to the end of the employment, on January 1, 1927 (when the partnership was dissolved), at a salary of $100 per month and 15 per cent. of net profits.

A large part of the firm's profits was, of course, paper not yet reduced to cash. The practice, generally, not strictly followed throughout these years, was to pay to plaintiff his portion of the profits as they were reduced to cash. Plaintiff was paid his monthly salary and his percentage of net cash profits in full to January 1, 1927. The question is on

the 15 per cent. of net profits not yet reduced to cash on January 1, 1927, which, as found by the jury, was the sum of nearly $8,400.  The plaintiff claims that, under the contract of employment, he should have it. Porter, sued as the surviving partner, Wyman having died in October, 1930, testified of an agreement and understanding that, in the event of termination of plaintiff's employment, plaintiff was to have no percentage on anything but then net cash profits, that it was his understanding that no matter how large a percentage of profits might eventually be coming to plaintiff it might be cut off by the simple act of discharging him or by dissolution.

Wyman, it seems, did not agree with Porter that under plaintiff's contract of employment his percentage of profits upon termination of the employment by dissolution of the partnership was limited to the then net cash profits.  His understanding, seemingly, was that plaintiff was entitled to his full percentage of net profits whether then cash or otherwise.

Wyman caused some explanatory writings, in respect of items shown on the books, to be made in the books, this to show the state of plaintiff's account and indicating indebtedness to plaintiff.

The trial judge instructed, of which no complaint is made, that one at least, and the more important of the writings, was made a few days after dissolution.  Whether the writings were made before or after the dissolution and transfer to the trust company is, to say the least, a question of fact on this record, but we shall assume, for purpose of this opinion, that these writings were made after dissolution.

On January 10, 1927, a paper was written in duplicate, largely at least by Wyman and signed by plain-

tiff alone, and one was given to and retained by Wyman and the other kept by plaintiff. Part of this writing, to be noticed, is in effect a statement by plaintiff that he accepts as correct his account as shown on the books of the partnership.

On January 1, 1927, the partners agreed in writing dissolving the partnership, and to assign and convey to Muskegon Trust Company its property, real and personal, for purpose of winding up the affairs of the partnership. And, on January 3, 1927, a second agreement was made by the partners, from which:

"Whereas, at this time, it is impossible to produce schedules and figures in detail for the purpose of drawing up a formal and final trust agreement, it is hereby agreed that said Muskegon Trust Company shall forthwith take over the entire control and management of the office formerly used by said partnership, and of all the assets and properties of said partnership, and shall manage and control same under this agreement until such time as a final and formal trust agreement may be prepared and executed."

The formal trust agreement was made on January 3, 1927. The effect of these writings on their face was to set over unto the Muskegon Trust Company full and sole power and authority to wind up the partnership affairs. A few days later the trust company took over the books, property, and affairs of the partnership.

From judgment on verdict for plaintiff, defendant has appealed.

We quote pertinent provisions of our uniform partnership act, 2 Comp. Laws 1929, § 9870:

"(Partnership not terminated by dissolution.) On dissolution the partnership is not terminated, but

continues until the winding up of partnership affairs is completed.''

2 Comp. Laws 1929, § 9875, in part. (See compiler's note to the section):

''(Power of partner to bind partnership to third persons after dissolution.)

''1.   After dissolution a partner can bind the partnership except as provided in paragraph three:

''(a)   By any act appropriate for winding up partnership affairs or completing transactions unfinished at dissolution,

''(b)   By any transaction which would bind the partnership if dissolution had not taken place, provided the other party to the transaction:

''(1)   Had extended credit to the partnership prior to dissolution and had no knowledge or notice of the dissolution.   *   *   *

''3.   The partnership is in no case bound by any act of a partner after dissolution:

''(a)   Where the partnership is dissolved because it is unlawful to carry on the business, unless the act is appropriate for winding up partnership affairs, or

''(b)   Where the partner has become bankrupt, or

''(c)   Where the partner has no authority to wind up partnership affairs, except by a transaction with one who:

''(1)   Had extended credit to the partnership prior to dissolution, and had no knowledge or notice of his want of authority, or

''(2)   Had not extended credit to the partnership prior to dissolution, and, having no knowledge or notice of his want of authority, the fact of his want of authority has not been advertised in the manner provided for advertising the fact of dissolution in paragraph (1b[2]).''

2 Comp. Laws 1929, § 9877:

"(Right to wind up.) Unless otherwise agreed, the partners who have not wrongfully dissolved the partnership or the legal representative of the last surviving partner, not bankrupt, has the right to wind up the partnership affairs: *Provided, however,* That any partner, his legal representative, or his assignee, upon cause shown, may obtain winding up by the court."

2 Comp. Laws 1929, § 9851:

"(Partnership bound by admission of partner.) An admission or representation made by any partner concerning partnership affairs within the scope of his authority as conferred by this act is evidence against the partnership."

Under section 9870, the partnership was not terminated by the dissolution, but is continued until winding up shall have been completed. There was a partnership, therefore, when Wyman died, so this suit is brought properly against the surviving partner. *Van Kleeck* v. *McCabe,* 87 Mich. 599 (24 Am. St. Rep. 182).

Under section 9851, a partner may make a binding admission if "within the scope of his authority."

By section 9877, the partners, or certain of them, or legal representatives, have right to wind up the affairs "unless otherwise agreed."

Under section 9875, the partnership is not bound by any act of the partner after dissolution, where the partner has no authority to wind up partnership affairs, with a certain exception not here applicable, for plaintiff had knowledge of the dissolution and of the transfer to and appointment of the trust company for winding up partnership affairs.

The statute, therefore, may be read as suggesting a holding here that, because of the agreement of the

partners, known to plaintiff, Wyman had no authority in respect of winding up partnership affairs, and, therefore, no authority after dissolution to make a binding admission in respect of its affairs. But we cannot so hold.

Plaintiff as a creditor might proceed to judgment against the partners or the survivor perfectly irrespective of the transfer to and appointment of the trust company. Without his consent, the partners could not impair the obligation of his contract. As the partners may be sued in spite of the transfer to and appointment of the trust company, it follows that they may settle, adjust, or compromise the claim. It follows, too, that; to avoid litigation, they may adjust and settle any claim against the partnership. It therefore appears that, in spite of the transfer to and appointment of the trust company, there remained in the partners full authority in respect of adjustment and compromise and settlement of claims against the partnership. To make a binding admission, an admission receivable in evidence, in respect of plaintiff's claim against the partnership, a past partnership transaction, was therefore within the scope of Wyman's authority as a partner after dissolution and pending winding up the affairs.

The rule in this State, in common with many highly respectable authorities, fully reviewed in a note, 73 A. L. R. 465, is stated in *Pennoyer* v. *David,* 8 Mich. 407. The rule of these cases, stated by the author of the note:

"While the dissolution of the partnership works a destruction of the power of any one partner to bind another as a partner in any future business, it does not affect what is past, and that consequently the admissions of one partner made after the dissolution of the firm, and relating to past partnership

transactions, are admissible as against all the partners.''

Appellant cites a number of Michigan cases as holding to the contrary; but upon examination they will be found to fall within the first clause or exception to the rule as above stated and set forth in the *Pennoyer Case.*

The explanatory writing which Wyman caused to be made on the partnership books is no more than an admission respecting a past partnership transaction. It is not clear what legal effect is claimed for the writing signed by plaintiff alone of January 10th. It is not sued upon. The most that can be claimed for it, in this case, in view of the fact that Wyman helped to prepare it and received it, is that it is evidence of an admission of liability on a past partnership transaction. Evidence of these admissions was properly received. This and other evidence, including the books and records of the partnership, as against evidence adduced by defendant, made the issue for the jury which was submitted without reversible error.

We must conclude. Other points suggested have been considered and call for no discussion. We find no reversible error.

Affirmed.

McDONALD, POTTER, SHARPE, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.